UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALL FUNDS ON DEPOSIT IN ANY AND ALL U.S. INTERBANK ACCOUNTS MAINTAINED AT THE STANDARD CHARTERED BANK NEW YORK BRANCH BY THE STANDARD CHARTERED BANK, SHENZHEN CHINA UP TO AND INCLUDING THE AMOUNT OF $3,120,186.55 WHICH SUM REFLECTS THE AMOUNT OF CERTAIN FUNDS DEPOSITED INTO THE STANDARD CHARTERED BANK, SHENZHEN, CHINA IN THE NAME OF SWISS DEVELOPMENT CORPORATION INTERNATIONAL LIMITED,

ALL FUNDS ON DEPOSIT IN ANY AND ALL U.S. INTERBANK ACCOUNTS MAINTAINED AT THE STANDARD CHARTERED BANK NEW YORK BRANCH BY THE STANDARD CHARTERED BANK, SHENZHEN CHINA UP TO AND INCLUDING THE AMOUNT OF $96,108.00 WHICH SUM REFLECTS THE AMOUNT OF CERTAIN FUNDS DEPOSITED INTO THE STANDARD CHARTERED BANK, SHENZHEN, CHINA IN THE NAME OF QINBA INTERNATIONAL LIMITED,

ALL FUNDS ON DEPOSIT IN ANY AND ALL U.S. INTERBANK ACCOUNTS MAINTAINED AT THE BANK OF CHINA LIMITED, NEW YORK BRANCH BY THE BANK OF CHINA, JILIN, CHINA UP TO AND INCLUDING THE AMOUNT OF $81,691.00 WHICH SUM REFLECTS THE AMOUNT OF CERTAIN FUNDS DEPOSITED INTO THE BANK OF CHINA, JILIN, CHINA IN THE NAME OF YUJUN ZHAO,

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

C.A. NO.

CA 07 141 S

ALL FUNDS ON DEPOSIT IN ANY AND ALL )
U.S. INTERBANK ACCOUNTS MAINTAINED )
AT THE BANK OF CHINA LIMITED, )
NEW YORK BRANCH BY THE BANK OF )
CHINA, JILIN, CHINA UP TO AND )
INCLUDING THE AMOUNT OF $109,350 )
WHICH SUM REFLECTS THE AMOUNT OF )
CERTAIN FUNDS DEPOSITED INTO THE )
BANK OF CHINA, JILIN, CHINA IN THE )
NAME OF GENESCIENCE )
PHARMACEUTICALS CO., LIMITED )
)
Defendants )

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Plaintiff UNITED STATES OF AMERICA, by its attorneys ROBERT CLARK CORRENTE, United States Attorney for the District of Rhode Island, Michael P. Iannotti, Assistant United States Attorney, Linda Samuel, Deputy Chief, Asset Forfeiture and Money Laundering Section, Department of Justice and Frederick Reynolds, Trial Attorney, Asset Forfeiture and Money Laundering Section, Department of Justice, alleges the following upon information and belief:

**NATURE OF THE ACTION AND DEFENDANTS IN REM**

This is a civil *in rem* action to enforce the provisions of Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), 981(k)(1)(A), 984(a)(1) and (2) in order to condemn and forfeit to the exclusive use and benefit of the United States of America the following properties ("the Defendant Properties"):

1) All funds on deposit in any and all U.S. interbank accounts maintained at the Standard Chartered Bank, New York branch by the Standard Chartered bank, Shenzhen, China up to and including the amount of $3,120,186.55.
2) All funds on deposit in any and all U.S. interbank accounts maintained at the Standard Chartered Bank, New York branch by the Standard Chartered Bank, Shenzhen, China up

to and including the amount of $96,108.00.

3) All funds on deposit in any and all U.S. interbank accounts maintained at the Bank of China Ltd., New York branch by the Bank of China, Jilin, China up to and including the amount of $81,691.00.

4) All funds on deposit in any and all U.S. interbank accounts maintained at the Bank of China Ltd., New York branch by the Bank of China, Jilin, China up to and including the amount of $109,350.

The Defendant Properties are subject to forfeiture to the United States insofar as they were involved in transactions or attempted transactions in violation of Title 18, United States Code, Sections 545 (smuggling) and 1956 (money laundering).

## JURISDICTION

This Court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345 (district courts have original jurisdiction of all civil cases commenced by the United States and 1355 (district courts have original jurisdiction of any action for forfeiture).

## VENUE

Venue in the District of Rhode Island is proper pursuant to 18 U.S.C. § 981(h).

## STATUTORY BACKGROUND

Pursuant to Title 18, United States Code, Section 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of federal money laundering laws, Title 18, United States Code, Section 1956, or traceable to such property, is subject to forfeiture to the United States of America.

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. Section 545 (smuggling), is subject to forfeiture to the United States.

Pursuant to Title 18, United States Code, Section 981 (k)(1)(A), if funds subject to

forfeiture are deposited into an account at a foreign bank, and that foreign bank has an interbank account in the United States with a covered financial institution (as defined in Title 31, United States Code, Section 5318(j)(1)), the funds subject to forfeiture shall be deemed to have been deposited into that foreign bank's interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant *in rem* regarding the funds may be served on the covered financial institution and funds in the interbank account, up to the value of the funds held in the account at the foreign bank, may be restrained, seized, or arrested.

If a forfeiture action is brought against funds pursuant to Title 18, United States Code, Section 981 (k)(1)(A), it is not necessary for the Government to establish that the funds are directly traceable to the funds that were deposited into the foreign bank, nor is it necessary for the Government to rely on the application of 18 U.S.C. § 984.

## FACTUAL BACKGROUND

1. This *in rem* forfeiture action stems from a joint United States Food and Drug Administration, Office of Criminal Investigation (FDA-OCI), Drug Enforcement Administration (DEA), United States Postal Inspection Service (USPIS), Immigration and Customs Enforcement (ICE), and Internal Revenue Service-Criminal Investigation Division (IRS-CID) investigation into the smuggling and illegal sale of hGH (human growth hormone) via the internet. The investigation determined that the Defendant Properties received proceeds from the smuggling of hGH into the United States in violation of 21 U.S.C. § 333(e) and 18 U.S.C. §545. The investigation, as detailed below and in the Affidavit of FDA-OCI Special Agent Jason Simonian, attached hereto as Exhibit A and incorporated as if fully set forth herein, also found that the proceeds realized from the smuggling and sale of hGH were transferred out of the United States in violation of 18 U.S.C. §1956, money laundering.

2. During the course of the investigation, agents executed a number of warrants in Rhode Island and seized quantities of anabolic steroids, hGH, and large amounts of currency. As a result of these searches, agents developed a Confidential Source ("CS") who was an anabolic steroid/hGH trafficker. The CS, prior to his/her (CS) involvement with the Government, used the internet as the primary means of communication for the smuggling and sale of hGH. The CS has no known prior arrests or convictions for any crime and the CS was made aware of potential criminal charges against the CS involving this investigation. The agents made no promises to the CS other than to promise that they would inform the appropriate prosecutor of the CS' assistance in this investigation. Some assets and currency previously seized by the Government from the CS have been and may be returned in the future to the CS. The CS has never been known to lie to agents and has provided reliable information in the past aiding in the identification of suspects in this investigation and the arrest of one individual in conjunction with the seizure of a suspected clandestine anabolic steroid laboratory.

3. The CS informed agents about one of his/her (CS) sources for hGH known to the CS as Mamta a/k/a Ander Jaa, a/k/a Anderson Jefferson (hereinafter referred to as "Jaa"). Under the CS' arrangement with Jaa, the CS took orders for hGH, collected payment for the shipments, remitted that payment to Jaa and then acted as a "remailer" for Jaa. Remailers are individuals who receive and subsequently mail illegal drug packages at the behest of the primary drug trafficker to shield the primary drug trafficker from law enforcement scrutiny in the event of a seizure.

4. Prior to obtaining the CS' cooperation, the agents executed a federal search warrant on internet service provider ("ISP") Yahoo.com. This search revealed numerous e-mail communications between the CS' e-mail address and Mamta1001@yahoo.com known to be used

by Jaa. The recovered e-mails detailed significant importation of, and payment for, illegal hGH. For example, on or about January 25, 2006, the CS wrote to Jaa via e-mail and stated, "Both out bro, I'm attaching the latest XL. Peace". The CS attached a spreadsheet to the e-mail that included approximately five hundred and seventy-one transactions with headings such as "Date," "No. of kits" "Name," "cost of kit," "type of gh," "remailing charges," "Freight," "Tracking No," "Total of GH Cost," "Total kits remailed," "Total Remailing Fees," "Items received for remail money," "Cost of Items," "Total cost of Credits," and "Balance of remail." The CS has confirmed that this spreadsheet was a ledger indicating the amounts of hGH and "Jintropin"[1] the CS "remailed" at the direction of Jaa and that Jaa would direct bank transfers by the CS to an account held in the name of the Hunan Helison Material Trade Company maintained at the Agricultural Bank of China. Other such e-mails also confirmed the nature of the relationship between the CS and Jaa.

5. During this period the agents discovered the website identified as www.gensci-china.com that purported to be a website for Genescience Pharmaceuticals Co., Ltd. ("GPC"). The website claims that GPC is one of the largest biopharmaceutical companies in China and is the manufacturer of Jintropin[2]—one of the hGH products distributed by the CS for Jaa. The web-site also provided e-mail address jintropin2005@yahoo.com for contact information about Jintropin.

6. In September of 2006, agents directed the CS to contact GPC at the e-mail

1 According to the Treasury Enforcement Communication (TECS) computer database, Customs and Border Protection (CBP) intercepted parcels in the past which contained suspected Jintropin, destined to individuals within the United States. On May 17, 2006, the FDA issued a revised import alert (Import alert IA66-57) titled "Detention without physical examination of foreign unapproved prescription drugs" and listed "Jintropin" (produced by GPC) as part of that alert and the unlicensed sale of hGH is a felony pursuant to 21 U.S.C. § 333(e)(3).
2 Jintropin is the brand name of the hGH, Somatropin, manufactured by GPC. Human growth hormone is defined in 21 U.S.C. § 333 (e)(4) as somatrem, somatropin, or an analogue of either of them.

address, jintropin2005@yahoo.com utilizing an undercover e-mail address from the ISP cyber-rights.net. The CS made contact with an individual purporting to be "Jack Edwards" (hereinafter "Edwards") using e-mail address jintropin2005@yahoo.com. The initial communication was as follows:

**CS:** Hi, I found your website online and would like to order some Growth hormone from you. Im located inside the USA. Do you guys ship to the US from China? If yes I'd like to get 1500IU's of Jintropin GH. I heard dealing with Gensci directly ends up being cheaper for my personal GH use and for a few kits for my friends. Let me know further info. Goodnight.

**Edwards:** Hi, Thanks for your interest in Jintropin. If you are satisfied with our service, please pass the word around. Please be noted that genitropin (sell by Progeni) and hgh sold at www.ammetals.com mail:minmetals_anhui@hotmail.com. are all fake hgh. We mainly sale 10 vials of 10 IU (without water for injection) kit. Our price is $27/10IU vial, shipping is additional, we normally ship it by UPS. DHL and TNT. Our normal minimum order is 500IU. If you are frequent buyer of our Jintropin, we highly recommend you to join in our 100% guarantee delivery insurance program. In this program you add $3/vial for each shipping, In case of package loss, we will reship it for free. We guarantee 100% delivery. If you decide to join the program, total payment for 500IU is $1580. We take payment by bank wiring or western union. Pleas try western union transfer service(not money order) to the following account: FIRST NAME; DePing LAST NAME; Dong ACCOUNT CITY: Shanghai, China Please e-mail us the transfer code, name used for the WU transfer, your address and phone for us to get the payment and make the delivery. Western Union transfer takes only one day and we shall be able to make the delivery next day. If you order 1500IU, total would be $4200. jack

**CS:** Very good Jack. Give me about a week or so to come up with the money and then I'll do a bank wire transfer to your account. Thank you for your help.

**Edwards:** Please wire your payment to the following account:
BENEFICARY~{!~}S NAME: QINBA INTERNATIONAL LIMITED
BANK NAME: Standard Chartered Bank Shenzhen Br. UNIT 1-8, 52F, SHUN HING SQUARE DI WANG COMMERCIAL

CENTRE NO.5002 SHENNAN ROAD EAST SHENZHEN, CHINA 518008
SWIFT CODE: SCBLCNSXSHZ
BENEFICIARY~{!/~} S A/C NO: 3652390411
The bank wiring normally takes about 5 days to get to our account. Please e-mail us the exact name you used to make the payment, exact amount of payment made, your address and phone for us to track payment and for delivery. We will then make the delivery. The delivery time normally is about 5 days.

**CS**: Sounds good. Sorry about all the questions, this is the first time Im ordering from you guys. I have a USPS PO Box address that I want the package shipped to. Is it possible you send the pack out with USPS express instead of UPS, or TNT service. Cause those couriers will not deliver to my P.O. Box. Thank you

**Edwards**: Hi, whether you can use P.O. Box has to depend on where you live. Please let us know. Jack

**CS**: I live in Rhode Island on the east coast. Thanks.

7. Based on the above conversation, it is clear that (1) GPC sells Jintropin; (2) that GPC knowingly ships Jintropin to the United States; and (3) ships Jintropin both for personal use and wider distribution by the remailer. Additionally, consistent with illegal drug distribution patterns, GPC's request that payment go to a bank account held in the name of another entity—in this case "Qinba International Limited" or "DePing Dong"—is a typical tactic of drug traffickers to receive payment in fake names or front companies to thwart law enforcement's ability to trace and seize criminal proceeds. During the course of this investigation, agents found several other names used by Edwards for the payment of Jintropin.

8. On November 14, 2006, United States Magistrate Judge Lincoln D. Almond, issued a search warrant for the records and other information and contents of wire or electronic communications pertaining to the e-mail jintropin2005@yahoo.com held by Yahoo. The search revealed numerous e-mail communications to and from Edwards and his purported assistant,

"Sophia." Edwards and Sophia communicated with individuals in several countries, including the United States regarding the sale of Jintropin. Such e-mails clearly demonstrate not only the sale of Jintropin but also the knowledge that the sale of Jintropin in the United States is illegal. For example, on or about April 23, 2006, Edwards, using the e-mail address jintropin2005@yahoo.com, wrote to an individual and stated:

> "HI, If you want 1000IU of 4IU, the best would be $3000 including all the cost. What do you mean you don't want insurance because you are in New York? ***To ship to new york is not legal*** and could be confiscated. We made a lot of shipping to New York and seizure rate is no difference than other part of the world. Jack." (emphasis added)

9. Other e-mails showed a similar concern for law enforcement efforts. For example, in January, 2006, Edwards, using e-mail address jintropin2005@yahoo.com, wrote to an individual and stated "[f]rom now on please only contact us via luispower88@yahoo.com. US custom is tighten control, you should stop email directly to gensci anymore and delete all your record. Thanks. John." As is apparent from this e-mail, Edwards was acutely aware that shipment to the United States of Jintropin was illegal and took affirmative steps to frustrate law enforcement efforts to stop such shipments.

10. Given this new information, agents obtained an additional search warrant from Magistrate Judge David L. Martin in the United States District of Rhode Island for records and other information and contents of wire or electronic communications pertaining to the e-mail address luispower88@yahoo.com held by Yahoo. These e-mails, like the ones from the jintropin address, show widespread smuggling of hGH into the United States and payment for such smuggled goods into five accounts as noted below. Additionally, the e-mails revealed that the

only product sold by GPC and/or Edwards was hGH/Jintropin.[3]

11. Agents analyzing data obtained from the above noted search warrants, in addition to other data, have determined that there are five separate bank accounts utilized by Edwards and Sophia to receive payment for hGH. The five bank accounts are: (1) account number 4724310411, held in the name of Swiss Development Limited, at the Standard Chartered Bank, Shenzen Branch, 2/F Hoi Yin, Commercial Building, Jia Bin Road, Shenzen Guangdong Province, China (hereafter referred to as Account 1); (2) account number 3652390411, held in the name of Qinba International Limited, at the Standard Chartered Bank (hereafter referred to as Account 2); (3) account number 211266014020013034, held in the name of Yujun Zhao at the Bank of China, Limited, 1 Fuxingmen Nei Dajie, Beijing, China, (hereafter referred to as Account 3); (4) account number OSA 11443633005480, held in the name of Genformx Limited, at the Shanghai Pudong Development Bank (hereafter referred to as Account 4); and (5) account number 812000638508091001, held in the name of Genescience Pharmaceuticals Co., Limited at the Bank of China, Limited (hereafter referred to as Account 5) (collectively the "Five Accounts").

12. As a result of this investigation, Agents were able to trace $3,407,335.55 in proceeds from the smuggling and sale of hGH that were sent from the United States to the Five Accounts.

13. For example, agents traced six (6) transfers totaling $8,870.00 from on or about July 20, 2004 to on or about April 13, 2006. These transfers originated from an account held in the name of Alan J Lobel of 13241 Wittmore Circle, Dallas, Texas and 5720 LBJ Freeway, Suite

3 For example, in response to an e-mail inquiring if Edwards' company provided steroids, Edwards wrote, "Sorry, we don't sale steroid hormone. We only supply jintropin hGH."

150, Dallas, Texas and were deposited into either Account 1 or Account 3. The agents also discovered communication between luispower88@yahoo.com (used by Edwards) to ALANLOBEL@bigplanet.com (used by Lobel) stating, "hello; BY DHL: 3311296940 5 kits of 100 iu to; BioEnergetic HealthCare Dr. Alan Lobel 5720 LBJ Freeway Suite 150 Dallas, Texas 75240 USA." This e-mail confirms the shipment of five hundred international units of hGH to an address within the United States to Lobel.

14. Similarly, agents traced approximately twenty-four (24) transfers totaling $119,100.00 from on or about July 13, 2005 to January 12, 2007 that were made from an account held in the name of Fitness Consultants of 2703 Villa Del, Sugarland, Texas to Account 1. Additional e-mail records demonstrated that these transfers were proceeds from the smuggling of hGH into the United States. For example, in one e-mail bfocker1@htmail.com e-mailed Edwards at jintropin2005@yahoo.com and asked if Edwards could "ship 20-100iu kits per package on my next order?, or will that cause trouble at customs Brock." Edwards responded that "Package size is very important, the smaller the better. The largest we can do would be 10 100IU kits for each shipping. Or we can ship 10 200IU jintropin kit, but this would be without water for injection. I assume you won't like it." Subsequently, Falkenhagen e-mails Edwards and states that, "[t]he wire transfer is complete for: $8400.00 Number of kits ordered: 40 kits Wire Reference Number: 001045 The wire will be from Brock Falkenhagen/Fitness Consultants (they are the same acct.)" It is clear from these communications that not only is Edwards selling and shipping Jintropin to the United States, Edwards is aware of the illegal nature of such shipments and takes great care to frustrate any seizure of the smuggled hGH.

15. Agents have detailed numerous other transactions and e-mail exchanges relating to the smuggling of Jintropin into the United States and the transfer of payments for the

smuggled Jintropin/hGH out of the United States to the Five Accounts. For a complete description of this tracing, see paragraphs 15-72 of the Affidavit of FDA-OCI Special Agent Jason Simonian, attached hereto as Exhibit A as incorporated as if fully set forth herein.

16. Based upon this investigation, there is probable cause to believe that the Five Accounts were utilized (1) to receive funds that were the proceeds of the specified unlawful activity of smuggling hGH into the United States in violation of 18 U.S.C. § 545 and that these financial transactions were conducted with the intent to promote the specified unlawful activity of smuggling hGH into the United States in violation of 18 U.S.C. § 1956(a)(1)(A)(i); (2) to receive funds that were the proceeds of the specified unlawful activity of smuggling hGH into the United States in violation of 18 U.S.C. § 545 and that these financial transactions were conducted with the knowledge that the transactions were designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity of smuggling hGH into the United States in violation of 18 U.S.C. §1956(a)(1)(B)(i); and (3) to transmit funds from a place in the United States to a place outside the United States with the intent to promote the specified unlawful activity—to wit the smuggling of hGH into the United States in violation of 18 U.S.C. § 545—and/or knowing that the proceeds were from an unlawful activity and that the transmission was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity in violation of 18 U.S.C.§ 1956(a)(2)(A) and/or 1956(a)(2)(B)(i). Accordingly, these accounts, up to the amounts indicated above, are subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 981(k)(1)(A), 984(a)(1) and (2).

**FIRST CLAIM FOR RELIEF**

17. Plaintiff repeats the allegations of paragraphs 1 through 16 as if fully set forth herein.

18. Pursuant to Title 18, United States Code, Section 981(a)(1)(A) and 981(k)(1), any property, real or personal, involved in a transaction or an attempted transaction in violation of Title 18, United States Code, Section 1956, and any property traceable to such property, is subject to forfeiture to the United States of America.

19. The Defendant Properties were involved in transactions or attempted transactions in violation of Title 18, United States Code, Section 18 U.S.C. § 1956(a)(1)(A)(i) in that (1) the Defendant Properties were the proceeds of an unlawful activity to wit, the smuggling of hGH into the United States in violation of 18 U.S.C. § 545; (2) the remailers and Edwards knew that the funds involved in the financial transaction were the proceeds of an unlawful activity; and (3) the financial transactions were conducted with the intent to promote the carrying on of a specified unlawful activity, to wit, the illegal smuggling of hGH into the United States (18 U.S.C. § 545).

20. 18 U.S.C. § 1956(c)(7)(D) provides that "specified unlawful activity" includes "...an offense under section 545 (relating to smuggling of goods into the United States)..."

21. As a result of the foregoing, the Defendant Properties and any property traceable thereto are subject to forfeiture to the United States.

**SECOND CLAIM FOR RELIEF**

22. Plaintiff repeats the allegations of paragraphs 1 through 16 as if fully set forth herein.

23. Pursuant to Title 18, United States Code, Section 981(a)(1)(A) and 981(k)(1), any property, real or personal, involved in a transaction or an attempted transaction in violation of

Title 18, United States Code, Section 1956, and any property traceable to such property, is subject to forfeiture to the United States of America.

24. The Defendant Properties were involved in transactions or attempted transactions in violation of Title 18, United States Code, Section 18 U.S.C. § 1956(a)(1)(B)(i) in that (1) the Defendant Properties were the proceeds of the specified unlawful activity, to wit the smuggling hGH into the United States in violation of 18 U.S.C. § 545; (2) the remailers and Edwards knew that the funds involved in the financial transaction were the proceeds from an unlawful activity ; and (3) the underlying financial transactions were conducted with the knowledge that the transactions were designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity of smuggling hGH into the United States.

25. 18 U.S.C. § 1956(c)(7)(D) provides that "specified unlawful activity" includes "an offense under section 545 (relating to smuggling of goods into the United States)."

26. As a result of the foregoing, the Defendant Properties and any property traceable thereto are subject to forfeiture to the United States.

**THIRD CLAIM FOR RELIEF**

27. Plaintiff repeats the allegations of paragraphs 1-16 as if fully set forth herein.

28. Pursuant to Title 18, United States Code, Section 981(a)(1)(A) and 981(k)(1), any property, real or personal, involved in a transaction or an attempted transaction in violation of Title 18, United States Code, Section 1956, and any property traceable to such property, is subject to forfeiture to the United States of America.

29. The Defendant Properties were involved in transactions or attempted transactions in violation of Title 18, United States Code, Section 1956(a)(2)(A) and/or 1956(a)(2)(B)(i) in

that (1) the Defendant Properties were the proceeds of the specified unlawful activity, to wit the smuggling hGH into the United States in violation of 18 U.S.C. § 545; (2) that the remailers and Edwards knew that the funds involved in the financial transaction were the proceeds from an unlawful activity; and (3) that the underlying financial transactions transmited funds from a place in the United States to a place outside the United States with the intent to promote the specified unlawful activity and/or with the knowledge that the proceeds were from an unlawful activity and that the transmission was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

30. 18 U.S.C. § 1956(c)(7)(D) provides that "specified unlawful activity" includes "an offense under section 545 (relating to smuggling of goods into the United States)."

31. As a result of the foregoing, the Defendant Properties and any property traceable thereto are subject to forfeiture to the United States.

**FOURTH CLAIM FOR RELIEF**

32. Plaintiff repeats the allegations of paragraphs 1-16 as if fully set forth herein.

33. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 981(k)(1), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Section 545 of Title 18 of the United States Code is subject to forfeiture to the United States of America.

34. The Defendant Properties are traceable, pursuant to 18 U.S.C. Section 981(k)(2), to the smuggling of hGH in violation of 18 U.S.C. § 545.

35. As a result of the foregoing, the Defendant Properties and any property traceable thereto are subject to forfeiture to the United States.

WHEREFORE, Plaintiff requests:

(1) That a Warrant of Arrest *In Rem*, in the form submitted with this Verified Complaint, issue to the United States Marshal for the District of Rhode Island, to the United States Attorney General, to the Secretary of the United States Treasury, or to Any Duly Authorized Law Enforcement Officer, commanding him to:

(a) arrest the defendant-in-rem, pursuant to the terms contained in the Warrant of Arrest *In Rem*; and

(b) give notice to all interested parties to appear and show cause why the forfeiture should not be decreed.

(2) That the Defendant Properties be forfeited and condemned to the use and benefit of the United States of America; and

(3) That Plaintiff be awarded its costs and disbursements in this action and such other and further relief as this Court deems proper and just.

Dated: April 16, 2007

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

MICHAEL P. IANNOTTI
Assistant U.S. Attorney
Fleet Center
50 Kennedy Plaza, 8th floor
Providence, RI 02903
401/709-5000

401/709-5017 (fax)
michael.iannotti@usdoj.gov

LINDA M. SAMUEL
(D.C. Bar 388970)
Deputy Chief
FREDERICK REYNOLDS
(TEXAS BAR #24003453)
Trial Attorney
Asset Forfeiture and Money Laundering Section
U.S. Department of Justice
Criminal Division
1400 New York Avenue, N.W.,
Washington, D.C. 20530
Telephone: (202) 353-1566
Fax: (202) 514-5522

VERIFICATION

STATE OF RHODE ISLAND )
COUNTY OF )

I, Jason Simonian, declare that I am Special Agent with the United States Food and Drug Administration's Office of Criminal Investigation (FDA-OCI), and have been so employed for over ten years, and as such have knowledge of the facts underlying the above-entitled action; that I have read the foregoing and know the contents thereof, and that the same is true of my own knowledge, except as to those matters herein stated to be alleged on information and belief, and as to those matters I believe them to be true.

That the source of my information and the grounds for my belief are the investigation of this matter, information supplied to me by other law enforcement agents and the official records and files of the United States.

I declare under penalty of perjury that the foregoing is true, to the best of my knowledge, information and belief.

Jason Simonian

JASON SIMONIAN
SPECIAL AGENT
UNITED STATES FOOD AND DRUG
ADMINISTRATION'S OFFICE OF CRIMINAL
INVESTIGATION (FDA-OCI)

Sworn to and subscribed to before me this 16th day of April, 2007.

Paulette E. Gamache

Notary Public

My Commission expires: April 30, 2010