**AFFIDAVIT**

I, Jason Simonian, being duly deposed and sworn, say:

1. I am a Special Agent with the United States Food and Drug Administration's Office of Criminal Investigation (FDA-OCI), and have been so employed since September of 1996. I was previously employed as a Special Agent of the United States Department of Labor for approximately 8 years. I have been trained by the FDA-OCI in those various means and methods by which illegal drug traffickers obtain posses, transport, divert, and distribute controlled substances and non-controlled prescription drugs (such as human Growth Hormone (hGH)). As part of my training from the FDA-OCI, I am aware of a variety of different methods which drug traffickers and associates of drug traffickers utilize to send and receive payment for illicit drugs, oftentimes in violation of federal money laundering statutes. I have also received training from the FDA-OCI in the means and methods by which drug traffickers launder their drug trafficking proceeds so as to disguise the origin of said proceeds and make it appear as if those proceeds were obtained from legitimate and lawful source(s) of activity.

2. On April 16, 2007, a Verified Complaint for Forfeiture In Rem was filed in the United States District Court for the District of Rhode Island. The Complaint seeks the forfeiture of funds and financial instruments deposited or credited to any account, or any correspondent account, maintained at the Standard Chartered Bank New York Branch by the Standard Chartered Bank, Shenzhen China not to exceed $3,216,294.55. On April 17, 2007, pursuant to the issuance of a Warrant of Arrest in Rem, those funds were seized from the Standard Chartered Bank's correspondent account. The $3,216,294.55 had been deposited into two separate bank accounts utilized by GeneScience Corporation for the purpose of receiving payment for Human Growth Hormone (hGH). Agents obtained wire transfer

records from the Federal Reserve Bank in New York and the Clearing House Company, LLC, detailing Bank to Bank currency transfers originating from the United States or other countries and deposited into the following accounts maintained at the Standard Chartered Bank: account number 4724310411, held in the name of Swiss Development Limited at the Shenzhen Branch, 2/F Hoi Yin, Commercial Building, Jia Bin Road, Shenzhen Guangdong Province, China; and account number 3652390411, held in the name of Qinba International Limited, also at the Shenzhen Branch. The Complaint further seeks the forfeiture of all funds on deposit in any and all U.S. Interbank accounts maintained at the Bank of China Limited, New York Branch by the Bank of China, Jilin, China up to and including the amount of $191,041.00. On April 17, 2007, pursuant to the issuance of a Warrant of Arrest in Rem, those funds were seized from the Bank of China's correspondent account. The $191,041.00 had been deposited into two separate bank accounts utilized by GeneScience Corporation for the purpose of receiving payment for hGH. Agents obtained wire transfer records from the Federal Reserve Bank in New York and the Clearing House Company, LLC, detailing Bank to Bank currency transfers originating from the United States or other countries and deposited into the following accounts maintained at the Bank of China: account number 211266014020013034, held in the name of Yujun Zhao, Changchun City, Jilin Province, China and account number 812000638508091001, held in the name of GeneScience Pharmaceuticals Co., Limited, 1 Renmin Street, Changchun, 130012, Changchun Jilin Province, China.

3. This investigation began in or about May 2005. Since that time, law enforcement has obtained evidence of a conspiracy involving those named in the indictment to illegally smuggle large quantities of GeneScience produced hGH ("Jintropin") into the United States. The investigation involved the interception of e-mails, pursuant to court authorized search

warrants, between Dr. Lei Jin, the CEO of GeneScience, and his confederates and customers throughout the world. As described in my affidavit attached to the Complaint, law enforcement reviewed in excess of twenty-thousand separate e-mail correspondences between Lei Jin and his confederates that date between 2003 and 2007. During that time Lei Jin advised his customers that GeneScience accepts payment for Jintropin from either Western Union wire transfers of bank-to-bank wire transfers. The investigation revealed that Jin utilized in excess of fifty (50) different names of recipients for the Western Union payments. When a long term customer inquired as to why the names changed so often, Jin explained that he did this to avoid arousing the suspicion of Western Union to their illicit activity. On several occasions, Lie wrote that Western Union would no longer accept names for a particular individual. Likewise, with regard to the bank transfers, Lie initially had customers wire money to the bank account maintained by GeneScience. As the business grew, Lie stopped this practice and began to utilize a series of bank accounts maintained under different names. These accounts included the accounts maintained under the names Swiss Development Limited, Qinba International Limited, and Yujun Zhao. A review of records, provided by the Federal Reserve Bank in New York and the Clearing House Company, LLC, detailing Bank to Bank currency transfers to the identified accounts, indicated that the accounts were used solely for the purposes of receiving funds for the illicit receipt of Jintropin that was smuggled into the United States. On numerous occasions Lei also advised his confederates that the accounts had been established in order to avoid the high tax rate imposed by the Chinese government. I believe that the investigation determined that the accounts were deceptive in nature in that the sole custody and control of the accounts was maintained by Lei Jin and GeneScience and that the entities Swiss Development Limited, Qinba International Limited,

and Yujun Zhao were merely shell accounts set up by Lei Jin and GeneScience as part of the scheme to covertly receive funds while raising a minimum level of suspicion. I believe that this fact is demonstrated by the fact that Lei Jin repeatedly directed his customers to wire funds into these accounts. I believe that the investigation has also determined that Lei Jin and GeneScience are fully aware of the seizures of all the identified accounts and have purposely failed to respond to the action. If Lie Jin or GeneScience were to respond, they would be subject to questioning by law enforcement officials and would have to disclose the very nature of the business they were attempting to disguise by the creating of the cited accounts.

4. In September, 2007, a sixteen (16) count indictment was returned in the United States District Court for the District of Rhode Island charging Lei Jin, GeneScience Pharmaceutical Company, Jeffery J. Rock, Ander Jaa, alias Anderson Jefferson and David Garcia in a scheme involving the smuggling and illegal distribution of hGH and money laundering.

5. A review of e-mail communications between in Lei and many of his customers showed immediately following the filing of the forfeiture action, Lei advised his confederates to stop wiring funds to the seized accounts at the Standard Chartered Bank. The e-mails directed confederates to send payments to a new account at the Standard Chartered Bank.

6. I have reviewed in excess of 1,000 emails sent between Lei Jin and an individual identified as "Natalia." For the period of time prior to the forfeiture action at the Standard Chartered Bank, "Natalia" had always been instructed to send payments for hGH to one of the seized Standard Chartered Bank accounts. The payments totaled hundreds of thousands of dollars for tens of thousands of vials of hGH. The shipments of hGH were sent contrary to Chinese law. Subsequent to the forfeiture action, Lei instructed Natalie to immediately cease

payments to the seized accounts and instructed her to instead wire money to a new account at the Standard Chartered Bank Shenzhen Branch held in the name of AUG LIMITED.

7. On April 18, 2007, Natalia Hachieva <natalia.pharm@yahoo.com> (Hereafter "Natalia") wrote: "Dear Mr. Lei, Today I receive information from Finland that goods could be sent to China by DHL. I didn't give permission of shipping goods because first I have to ask you whether you accept delivery by DHL or not? May I mention Gensci name as a consignee?"

8. On April 18, 2007, Jin Lei <leijin3@yahoo.com> (hereafter "Lei Jin") replied, "hi, I am not 100% positive. it would be best to return to Vladimir since he handles the shipping from china. **We never have the proper custom paper to ship the good outside china** therefore we are not sure if you return it to gensci we can take it our from custom or not. but since Vladimir has all the original paper work to deliver the good out he might be able to take the good."

9. On April 27, 2007, Lei Jin wrote, "Natalia, if you are planning to make new payment to us, please make sure NOT to send to our account!! Inform us when you are ready and we will let you know our new bank!! lei jin."

10. On April 28, 2007, Lei Jin wrote, Natalia, Did you receive my previous email regarding your future payment? Make sure NOT to send to our old bank account!! We have all the 30000vial of 10IU jintropin and 20000vials of 4IU ready to ship now. When you are ready to make the payment, please write to me so I will inform you the new bank account. Lei."

11. On May 7, 2007, Natalia wrote, "Dear Mr. Jin, Our bank is ready to transfer $114,000 but I have no new details of your bank. Please send them to me as soon as

possible. The 08 of May is the last working day during this week. I need: Bank name, Bank address, SWIFT Account No, Beneficiary's name, Beneficiary's address, Payment details. We would like to take Jintropin 10IU printed 10 000 vials. Thanking you in advance and waiting details. kindest regards, Natalia."

12. On May 7, 2007 Lei Jin wrote, "Please wire your payment to the following account: BENEFICIARY¡¯S NAME: QINBA INTERNATIONAL LIMITED, BANK NAME: Standard Chartered Bank Shenzhen Br. UNIT 1-8, 52F, SHUN HING SQUARE DI WANG, COMMERCIAL CENTRE, NO.5002 SHENNAN ROAD EAST, SHENZHEN, CHINA 518008, SWIFT CODE: SCBLCNSXSHZ, BENEFICIARY¡¯S A/C NO: 3652390411. The bank wiring normally takes about 5 days to get to our account. The delivery time normally is about 5 days."

13. Later on May 7, 2007, Lei Jin wrote, "Natalia, the account I just gave you was wrong. Please stop ALL the payment to us immediately!! it is very important. Jinlei."

14. On May 8, 2007, Natalia wrote, "Dear Mr. Jin, I stopped the payment but what should I do further? How to send money to you? We need Jintropin 10IU. Please let me know. Kind regards, Natalia."

15. On May 8, 2007, Lei Jin wrote, "How much do you need exactly? 10IU and 4IU? when do you want us to deliver the product? in April you said you want 30000 10IU and 20000 4IU and we made all the product available now."

16. On May 8, 2007, Natalia wrote, "Dear Mr. Jin, Ordered quantity we can take by parts. The first part is Jintropin 10IU 10 000 vials. We need them to be in Beijing this week. The rest parts - I'll inform you as soon as my boss give me instructions. Please inform me where to transfer money - I'll do it immediately. Kind regards, Natalia."

17. On May 8, 2007, Lei Jin wrote, "Please wire your payment to the following account: BANK NAME: **Standard Chartered Bank Shenzhen Br.**, UNIT 1-8, 52F, SHUN HING SQUARE DI WANG, COMMERCIAL CENTRE, NO.5002 SHENNAN ROAD EAST, SHENZHEN, CHINA 518008. SWIFT CODE: SCBLCNSXSHZ, BENEFICIARY¡¯S A/C NO: 3959700411, BENEFICIARY¡¯S NAME: **AUG LIMITED**, BENEFICIARY¡¯S ADDRESS; UNIT 1-8, 52F, SHUN HING SQUARE DI WANG, COMMERCIAL CENTRE, NO.5002 SHENNAN ROAD EAST, SHENZHEN, CHINA 518008."

18. On May 10, 2007, Natalia wrote, "Dear Mr. Jin, Payment of $114 000 is arranged to the new bank account. Tomorrow I'll send you swift confirmation. Please don't forget to ship goods to Beijing this week. Just to remind: Jintorpin 10IU printed vials N20 - 10 000 vials. Thanking you in advance. Kindest regards, Natalia.

19. On May 21, 2007 Natalia wrote, Dear Mr. Lei, We received Jintropin 10IU in Beijing, thank you very much. Our next request to prepare Jintorpin 4IU printed vials 10 000 for shipping to Beijing. As soon as we arrange the payment I'll let you know. Kind regards, Natalia."

20. In August of 2007, I attended a meeting at the United States Department of Justice, Asset Forfeiture Money Laundering Section, Washington, D.C. The meeting had been requested by attorneys representing the Standard Chartered Bank Limited (China) who wished to advise the government of those actions taken by the bank to recoup the monies forfeited from correspondent accounts associated with Swiss Development Limited and Qinba International Limited. During the course of that meeting, I was provided a series of documents outlining the actions taken by the Standard Chartered Bank. Those documents included

correspondence between the bank and the target account holders. The correspondence clearly advised the account holders of the nature of the forfeiture action, the justification for the seizure of the funds from the accounts, and that the seizure of the funds was a result of a legal action initiated in the United States District Court for the District of Rhode Island. The documents also included correspondence to the bank from attorneys representing Swiss Development Limited and Qinba International Limited.

21. On June 8, 2007, the Standard Chartered Bank (China) sent a letter to Swiss Development Limited, RM 202 Unit 5 block 9 Venice Garden Changchun City Jilin Province. The letter read, in part, "Re: Your Account No. [472310411] As you are aware, Standard Chartered Bank (China) Limited ("the Bank") has put in place a lien over your account balance since 18 April 2007. This lien is in conjunction with legal proceedings in the United States District Court, District of Rhode Island ("the US proceedings). "On May 8, 2007, we provided you with the case title of the US proceedings in order that you may take legal advice." In the letter the bank also explained the reason for the seizure, writing, "On 17 April 2007 an amount of US $3,120,186.55 ("the seized Amount") was seized from the Bank's US dollar account by the US authorities on the stated basis that there is probable cause to believe that your account with the Bank has been used to receive proceeds of illegal Human Growth Hormone sales in the United States.

22. Also on June 8, 2007, the Standard Chartered Bank sent a letter to Qinba International, Rm 1101 N0. 16 lane 1185 Changde D, Shanghai. The letter read, in part, "Re: Your Account No. [3652390411]. As you are aware, Standard Chartered Bank (China) Limited ("the Bank") has put in place a lien over your account balance since 18 April 2007. This lien is in conjunction with legal proceedings in the United States District Court, District

of Rhode Island ("the US proceedings). "On 17 April 2007 an amount of US $96,108 ("the seized Amount") was seized from the Bank's US dollar account by the US authorities on the stated basis that there is probable cause to believe that your account with the Bank has been used to receive proceeds of illegal Human Growth Hormone sales in the United States."

23. On June 26, 2007, the Zhong Lun Law Firm, Shanghai Office, wrote a letter to the Standard Chartered Bank (China) Shenzhen Branch. The letter was on behalf of both Swiss Development Limited and Qinba International Limited. The letter read, in part, "Yesterday, we received three pieces of document dated June 8, 2007 from your bank. This law firm has been authorized by Swiss Development limited to deal with the relevant matters concerning its account No. [4724310411] with the Bank; meanwhile, this Law Firm has been authorized by Qinba International Limited (hereinafter the above two companies are referred to as the "clients") to deal with the relevant matters concerning its account with the Bank." The letter continues with requests for certain documents while fully acknowledging the fact that the monies were seized from the correspondent accounts maintained at the Standard Chartered Bank, New York Branch.

24. On August 27, 2007, the Zhong Lun Law Firm, Shanghai Office, wrote a second letter to the Standard Chartered Bank (China). That letter read, in part, "This law firm has been authorized by Swiss Development Limited and Qinba International Limited (the "Clients") to deal with the disputes arising out of the Clients account with your Bank."

25. On July 5, 2007, lawyers representing the Standard Chartered Bank (China) Limited, sent letters to both Swiss Development Limited and Qinba International Limited. In both letters the Bank attorney wrote, in part, "The US proceedings regarding your companies property is a consequence of the alleged criminal offences committed by you and/or with your

knowledge and assistance, as detailed in the Complaint in the US proceedings. Monies representing funds passing through and held on your accounts have been seized as a consequence of such alleged activities. The Bank has asserted its rights of set-off and lien as a result of the seizure of funds by the US authorities. To date you have failed to provide the Deposit to the Bank as requested to make good the Shortfall resulting from the seizure."

26. On September 29, 2007, Bradly Blum, the owner and operator of North American GeneScience was proffered in the presence of his attorney at the United States Attorneys Office for the District of Maryland. At the proffer, Blum, who would subsequently plead guilty on February 1, 2008, to one count of conspiracy to distribute hGH, advised the government that beginning in the year 2003, he was in partnership with Lei Jin and GeneScience Corporation to distribute Jintropin brand hGH throughout the United States. Blum stated that he had personally been to China and met with Lei Jin at the GeneScience factory site. Blum stated that he was directed by Lei to make payment for the hGH by either Western Union wire transfers or by bank to bank transfers to Swiss Development Ltd., a bank account Blum advised was controlled by GeneScience. As indicated above, Swiss Development Ltd. is one of the bank accounts at the Standard Chartered Bank, Shenzhen China which maintains a correspondent account at the Standard Chartered Bank New York Branch from which funds were seized in the May 2, 2007.

27. I have spoken with FDA-OCI Special Agent (SA) Michael Widenhouse, who was the lead investigator in the Blum investigation. Widenhouse has advised me that Blum, whose plea agreement called for him to provide cooperation to law enforcement, has personally stated to him that Lei Jin had told him (Blum) that the United States Government had seized money from GeneScience controlled bank accounts. SA Widenhouse advised that Blum has

informed him of this on more than one occasion, the latest being during a debriefing that occurred subsequent to Blum entering his above cited guilty plea on February, 1, 2008.

28. Based upon the foregoing, this investigation has established that prior to the April 17, 2007 seizure of the funds described above, Lei Jin and GeneScience Corporation had directed customers and distributors to wire payments for illicitly smuggled Jintropin to the Standard Chartered Bank, account number 4724310411, held in the name of Swiss Development Limited and account number 3652390411, held in the name of Qinba International Limited. After the seizure, Lei Jin and GeneScience Corporation advised those same customers and distributors to send payment for the illicitly smuggled Jintropin hGH to the Standard Chartered Bank, account number 3959700411 held in the name of AUG LIMITED. Additionally, investigation has determined that Lei Jin and GeneScience were aware of the seizure of the funds for forfeiture in that Lei has personally advised his primary United States partner, Bradley Blum, of the fact the money was seized from GeneScience maintained accounts by the United States government.

Jason Simonian
Jason Simonian
Special Agent
U.S. Food and Drug Administration
Office of Criminal Investigation

Subscribed and sworn to before me,
this 21st day of February, 2008 at
Providence, Rhode Island.

Linda A. Mazmanian, Notary Public
Notary Public
My commission expires 8/27/09